## CALVIN HALE *vs.* JAMES T. JOSLIN & others.

Middlesex.   Nov. 23, 1882. — Feb. 27, 1883.   DEVENS & HOLMES, JJ., absent.

If a person executes a deed of land, and places it in the hands of A. with directions to keep it during the grantor's life and on his death to deliver it to the grantee, A. holds it as agent of the grantor, and not as agent of the grantee, and the grantor may revoke it at any time.

BILL IN EQUITY, filed November 29, 1880, alleging that, on August 7, 1873, Elijah Hale conveyed to the plaintiff by warranty deed a certain parcel of land in Stow, and on that day delivered the deed in trust to Edwin Whitney, one of the defendants, for the benefit and use of the plaintiff, as an escrow, and upon the express condition, and under the direction given by the grantor to Whitney, that, upon the grantor's decease, Whitney should forthwith deliver the deed to the plaintiff; that Whitney then received the deed in trust, as such an escrow, and upon said condition, and agreed with the grantor to comply with the direction so made and given by him; that Elijah Hale died on April 21, 1879, leaving a will, which, after the giving of certain specific legacies, devised the residue of his estate to his heirs at law, and appointed Joslin executor, with power to sell the real estate; that Joslin accepted the trust, and was duly appointed executor by the Probate Court; that, upon the death of Elijah Hale, Whitney refused to comply with said direction

in regard to the delivery of the deed to the plaintiff, although often requested so to do; that Whitney had delivered over the deed to Joslin, without the consent and against the wishes of the plaintiff, and refused to obtain the same from Joslin for the plaintiff; and that Joslin, although often requested by the plaintiff, refused to deliver the deed to him, and claimed to hold it under and by virtue of 'his appointment as executor, and because, as he asserted, he had been notified by the heirs at law that they claimed the premises mentioned in the deed as belonging to the estate of Elijah Hale. The prayer of the bill was that Joslin might be restrained from selling the premises conveyed by said deed; and for further relief.

The answer of Whitney alleged the following facts: Whitney, at the request of Elijah Hale, wrote out and prepared the deed mentioned in the bill, on or about the day of its date, and, as a magistrate, took the grantor's acknowledgment thereof. The grantor then placed the deed in Whitney's hand, and said: "I want you to take it and keep it as long as I live. Say nothing to brother Calvin or anybody else about it, and when I am gone, give it to him." The deed was in Whitney's custody until Elijah Hale's death, and was seen by no other person. On April 24, 1874, Whitney, at the request of Elijah Hale, prepared a will, which was then signed and executed by him, in the first paragraph of which were these words, " hereby revoking all former writings for the purpose heretofore made by me, whether in shape of will, codicil, deed or otherwise." At the time this will was executed, Elijah Hale told Whitney that the word " deed " so put in referred to the deed made to the plaintiff, which was then in Whitney's custody, and that he meant to revoke and cancel it; and told Whitney never to deliver the deed to the plaintiff or tell him anything about it, but to hand it back to the grantor some time, as he then preferred to have the property go by his will rather than by the deed. On November 26, 1876, at the request of Elijah Hale, Whitney prepared another writing for a last will, and which was then executed by the former for that purpose, the first paragraph of which contained these words, " hereby revoking all former wills, testaments and writings to that effect, either by deed or otherwise." At the time of preparing this will, Elijah

Hale said to Whitney that he must revoke and destroy the deed to the plaintiff; that he had the word "deed" so put in this will to revoke it; and that Whitney should hand it back to him some time, as he was not going to have all of his place go to the plaintiff, but meant to have half of it go to Joseph Hale, the plaintiff's son, as was provided in this will. On September 13, 1878, Elijah Hale, while talking with Whitney about the final disposition of his property, told him that he wanted his homestead place (the same described in said deed) to go to the plaintiff and to his son Joseph equally, and they could divide it to suit themselves; and that Whitney must hand back to him some time the deed he had made, and which was still in Whitney's custody, and never give it to the plaintiff or say anything to him about it. Upon the appointment of Joslin as executor, Whitney, upon his demand, delivered said deed to him; and the plaintiff never demanded the deed of Whitney.

At the hearing, before *Lord*, J., it was agreed that the answer of Whitney should be taken as an agreed statement of facts; and the judge reserved the case for the consideration of the full court.

*G. A. A. Pevey*, for the plaintiff.

*E. R. Hoar & G. A. King*, for the defendants, were not called upon.

W. ALLEN, J. We think the evidence shows that Elijah Hale did not intend that the deed should be delivered until his death. He did not intend that the plaintiff should have any present interest in the deed, but intended to keep in himself the dominion and control of it. It was in the hands of Whitney as a depositary for the grantor, and not as agent or trustee for the grantee. The act was intended to be in the nature of a testamentary act, which could be revoked at any time. As it was in fact revoked, it is not necessary to consider what effect it would have had if there had been no revocation. *Fairbanks* v. *Metcalf*, 8 Mass. 230, 237. *Hatch* v. *Hatch*, 9 Mass. 307. *Rockwood* v. *Wiggin*, 16 Gray, 402. *McGrath* v. *Reynolds*, 116 Mass. 566. *Shurtleff* v. *Francis*, 118 Mass. 154. *Wellborn* v. *Weaver*, 17 Ga. 267.                    *Bill dismissed.*