WILLIS H. TEWKSBURY *vs.* AMELIA B. TEWKSBURY.

Essex.    November 3, 1915. — February 10, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Deed,* Delivery. *Statute of Wills. Equity Pleading and Practice,* Appeal.

If the owner of real estate executes and acknowledges a deed of it and hands the deed to the grantee, who at once returns it to him, and it appears that the owner intends to retain control of the deed with the power and the right to change the disposition of the property during his lifetime and does not intend that the deed shall become operative either as to title or enjoyment until his death, the mere manual delivery of the deed is ineffectual to convey title; and if the owner dies intestate without a further delivery of the deed, the property passes to his heirs at law.

In a suit in equity to compel the plaintiff's stepmother, the defendant, to deliver to him as null and void certain deeds executed and acknowledged by his brother and purporting to convey to the defendant his interest in certain real estate formerly owned by the brothers as tenants in common, which deeds were alleged to have been retained in the brother's possession and not to have been delivered before he died intestate and without issue, leaving the plaintiff as his sole heir at law, it appeared that twelve years before the brother's death during a conversation between him, his father and the defendant, the brother handed the deeds to the defendant and she handed them back to him. The judge who heard the case found on all the evidence that it was understood and was stated by those present at that time that the property described in the deeds was to remain the brother's property during his lifetime, that upon his death the defendant was to receive the deeds and that the property then was to be hers, that the deeds were not delivered to the defendant for the purpose of then passing the title, but that the passing of the title was not to be effective until the brother's death, and that the title remained in him during his life. On

an appeal from a decree for the plaintiff, all the evidence being reported, it was *held* that the findings were warranted and the decree was affirmed.

BILL IN EQUITY, filed in the Superior Court on November 3, 1914, alleging in substance that on the death of one Angelia C. Tewksbury, late of Lawrence, and, later, of her husband Robert H. Tewksbury, certain real estate owned by her descended to her two sons, the plaintiff and Robert L. Tewksbury, and, on the death intestate and without issue of Robert L. Tewksbury on September 17, 1914, became the property of the plaintiff alone; that on October 30, 1902, Robert L. Tewksbury signed and acknowledged deeds of the two parcels of real estate in which the defendant was named as the grantee; that the deeds never were delivered to the defendant or to anyone for her, but that they remained in the possession of Robert L. Tewksbury at the time of his death; that the defendant nevertheless took possession of the deeds and unlawfully retained them and claimed an undivided one half interest in the real estate. The prayers of the bill were that the defendant be enjoined from recording the deeds, that they be declared null and void and that the defendant be required to deliver them to the plaintiff.

In the Superior Court, a commissioner having been appointed to take the evidence, the case was heard by *Carroll,* J. The material facts found by the judge are stated in the opinion. A final decree was made in accordance with the prayers of the bill, and the defendant appealed.

*N. P. Frye,* for the defendant.

*W. J. Bradley,* for the plaintiff.

DE COURCY, J. The judge who heard the evidence voluntarily filed a report of material facts found by him, and his findings will not be set aside unless they are plainly wrong. *Cohen* v. *Nagle,* 190 Mass. 4. There is no dispute as to most of the facts.

In October, 1902, the property in controversy was owned by the plaintiff, Willis H. Tewksbury and his brother Robert L. Tewksbury, as tenants in common, subject to a life interest in their father, Robert H. Tewksbury. Robert L., then about thirty-six years of age, was afflicted with epilepsy, and had lived with his father and stepmother (the defendant) since 1894. Robert H. Tewksbury was much older than his wife. He was anxious to provide for his sickly son, Robert L.; and the latter desired to

make some provision for his stepmother, in consideration of her past and future care of him. It was under these circumstances that the two deeds in question, written by Robert H. Tewksbury, were handed by Robert L. to the defendant, and handed back by her to Robert L. during the same conversation.

The only findings which the plaintiff contests are those to the effect that it was understood by all the parties present, and was so stated, that the property covered by the deeds was to remain the property of Robert L. during his lifetime, and that upon his death Mrs. Amelia Tewksbury was to record the deeds and the property was then to be hers; that the deeds were not delivered to the defendant for the purpose of then passing the title, but that the passing of the title was not to be effective until the death of Robert L. Tewksbury; and that the title remained in him during his life.

An examination of the evidence fails to show that these findings were "plainly wrong;" instead it fully justifies them. The deeds never were recorded, and until his death in September, 1914, they were kept in the box of Robert L. Tewksbury at the Essex Company's office and not in the box of the defendant. Subsequent to his father's death in 1910, one half of the rents were paid to Robert L's agent, by his direction, and the receipts given therefor were in his name. Indeed the defendant frankly testified, in cross-examination, that she did not understand she was to have any interest in the property until the death of Robert L.; and the answer, signed and sworn to by her, confirms this.

The mere manual act of handing the deeds to the defendant was not enough to constitute a legal delivery. An intention that the deeds should operate as a present conveyance of title was also essential. What Robert L. Tewksbury apparently undertook to do was to retain control of the deeds, with the power and right to change the disposition of the property during his lifetime. The deeds were not to become operative and effectual, either as to title or enjoyment, until his death. This was essentially an attempt to make a testamentary disposition of his property without complying with the formalities required by our statute of wills. *Stevens* v. *Stevens*, 150 Mass. 557. *Parrott* v. *Avery*, 159 Mass. 594. *Russell* v. *Webster*, 213 Mass. 493.

The facts in the case at bar distinguish it from cases where

there was a consummated delivery, with an intention that it should operate immediately, and a subsequent custody of the deed by the grantor; *Blackwell* v. *Blackwell*, 196 Mass. 186; and from cases where the deed was irrevocably deposited with a third person, to be delivered upon the performance of certain conditions, or after the grantor's death. See *Foster* v. *Mansfield*, 3 Met. 412; *Regan* v. *Howe*, 121 Mass. 424; Ann. Cas. 1915 C 378, note; 38 L. R. A. (N. S.) 942, note. However worthy the purpose of the parties, the method adopted by Robert L. Tewksbury to secure compensation for the defendant was legally ineffectual; and the decree must be affirmed.

*So ordered.*